UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DANIEL J. BOOTH, O/B/O ANNA
CATHARINE BOOTH, DECEASE

                Plaintiff,

v.                                         **DECISION AND ORDER**
                                                 17-CV-608S

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

1. Plaintiff Daniel Booth challenges the determination of an Administrative Law Judge ("ALJ") that his decedent, Anna Catherine Booth ("Claimant"), is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that Claimant has been disabled since April 14, 2013, due to chronic head, neck, and shoulder pain; muscle spasms; depression and anxiety; gastritis; anorexia; fibromyalgia; and asthma. Plaintiff contends that Claimant's impairments rendered her unable to work, and thus, that she is entitled to disability benefits under the Act.

2. Claimant applied for disability benefits on June 17, 2013, which the Commissioner denied on October 4, 2013. Claimant thereafter requested a hearing before an ALJ. On August 10, 2015, ALJ William Weir held a hearing in Buffalo, New York, at which Claimant appeared with counsel and testified. The ALJ considered the case *de novo*, and on June 2, 2016, issued a decision denying Plaintiff's application for

1

benefits.  The Appeals Council denied review.  Plaintiff filed the current action on July 3, 2017, challenging the Commissioner's final decision.[1]

3.	On January 8, 2018, Plaintiff filed a Motion for Judgment on the Pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket No. 8).  On March 7, 2018, the Commissioner filed a Motion for Judgment on the Pleadings.  (Docket No. 10).  Plaintiff filed a reply on March 30, 2018 (Docket No. 11), at which time this Court took the matter under advisement without oral argument.  For the following reasons, Plaintiff's motion is denied, and Defendant's motion is granted.

4.	A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5.	"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the

---

[1] The ALJ's June 2, 2016 decision became the Commissioner's final decision in this case when the Appeals Council denied Claimant's request for review.

2

evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6.  The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

7.  The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed"

3

> impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

8. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9. In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Claimant engaged in substantial gainful activity through 2013 and 2014, i.e., after her alleged onset date of April 14, 2013 (R. at 12);[2] (2) Claimant has not engaged in substantial gainful activity since January 1, 2015 (R. at 13); (3) Claimant has the following severe impairments: migraine headaches, cervicalgia, and depressive order (R. at 13); (4) Claimant does not have an impairment or combination of impairments that meet or medically equal any of the impairments listed in the C.F.R. (R. at 13);

---

[2] Citations to the underlying administrative record are designated as "R."

(5) Claimant retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with certain nonexertional limitations[3] (R. at 14-15); (6) Claimant was unable to perform any past relevant work (R. at 18); (7) transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Claimant is not disabled (R. at 18-19); and (8) there were jobs that exist in significant numbers in the national economy that the Claimant could perform (R. at 19).  Accordingly, the ALJ determined that Claimant was not under a disability as defined by the Act during the relevant period—April 14, 2013, through June 2, 2016.  (R. at 19-20).

10. Plaintiff challenges the ALJ's decision on three grounds: (1) his RFC finding was not supported by substantial evidence because "he improperly picked and chose evidence supporting only his finding of nondisability" rather than consider the whole record; (2) his RFC finding was not supported by substantial evidence because the ALJ gave no significant weight to any of the relevant medical opinions and therefore impermissibly substituted his own lay judgment over that of the medical professionals'; and (3) he failed to comply with SSR 82-59 when he repeatedly cited to Claimant's noncompliance with treatment pursuant to her hope of becoming pregnant.  Each argument is addressed in turn.

11. First, Plaintiff argues that the ALJ's RFC finding was not supported by substantial evidence because he "picked and chose evidence" by failing to consider medical evidence predating January 1, 2015—the date the ALJ determined Claimant

---

[3] The ALJ specifically found that Claimant had the residual functional capacity to perform simple, repetitive, one and two-step tasks of the sort required with jobs having a specific vocational profile of two or lower, and could do so in an office environment free of pulmonary irritants, dusts, fumes, gases, and temperature or humidity extremes.  (R. at 14-15).

5

stopped engaging in substantial gainful activity. (Pl.'s Br. at 16-19). It is true that an ALJ "cannot pick and choose only evidence from the same sources that supports a particular conclusion." Ebelink v. Colvin, 2015 WL 9581787, *6 (W.D.N.Y. Dec. 30, 2015). But it is also true that when a Claimant is found to be engaged in substantial gainful activity, she is not disabled as a matter of law. See 20 C.F.R. § 404.1520(b) ("If you are working and the work you are doing is substantial gainful activity, we will find that you are not disabled regardless of your medical condition or your age, education, and work experience."). The ALJ concluded that Claimant engaged in substantial gainful activity through 2013 and 2014 when she worked on a part-time basis and posted earnings well above the level of substantial gainful activity for those years. (R. at 12). Plaintiff's brief does not challenge the ALJ's finding with respect to Claimant's engaging in substantial gainful employment prior to January 1, 2015. Accordingly, the Court detects no error in the ALJ's decision to primarily consider medical evidence post-dating January 1, 2015. See Cutter v. Colvin, 673 F. App'x 78, 80 (2d Cir. 2016) (summary order) ("On this appeal, Cutter does not challenge the determination that he failed to demonstrate a 12-month period of continuous disability between the alleged October 8, 2010 onset date and the ALJ's June 4, 2012 denial of benefits. Such a finding was precluded by Cutter's undisputed gainful employment with GEICO from March 28, 2011, to October 8, 2011.") (citing 20 C.F.R. § 404.1520(b)).

12. Next, Plaintiff argues that the RFC is not supported by substantial evidence due to the ALJ's failure to give "significant weight to any of the relevant medical opinions" and thus "impermissibly elevated his own lay judgment over that of the medical professionals." (Pl.'s Br. Docket No. 8-1, at 20). It is true that, "[w]hile ALJs are entitled

to resolve conflicts in the record, they cannot pick and choose only evidence from the same sources that supports a particular conclusion." Boyd v. Colvin, No. 6:15-CV-06667 (MAT), 2016 WL 7155241, at *4 (W.D.N.Y. Dec. 8, 2016). However, in deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order). An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision." Id.

13. Here, the ALJ's written determination includes an analysis of all the medical opinions in the record. (R. at 15-18). Dr. Gullickson was Claimant's primary care provider, treating her both prior to and after the time when she stopped in engaging in substantial gainful activity. Treatment notes from the period of time Claimant was engaged in substantial gainful activity are as follows. An August 2013 physical and psychiatric examination reveal "entirely benign" results, including that Claimant had gained weight since her last visit, was eating better, denied fatigue, denied "feeling poorly in any way," denied difficulty breathing, coughing, wheezing, and other respiratory symptoms. (R. at 367). Notes from subsequent visits in October 2013, January 2014, February 2014, April 2014, May 2014, September 2014, and December 2014 reflect nearly identical notes reflecting stable conditions. (R. at 369, 371, 374, 377, 380, 383, 386). Dr. Gullickson's 2015 treatment notes—after Claimant stopped engaging in substantial gainful activity—similarly reflect benign conditions. (R. at 389-90, 392-93). Accordingly, the ALJ reasonably afforded "little weight" to Dr. Gullickson's Physical and Mental Residual Functional Capacity which concluded that Claimant was "still as limited" as she was in July 2013 while she was still engaged in substantial gainful activity, because

that conclusion was both unsupported by his own objective findings and his treatment notes as well as inconsistent with the degree of functional limitations suggested by Dr. Gullickson. (R. at 419-23, 424-29).

14. Dr. Kalonaros, a neurologist, treated Claimant for migraine headaches on four occasions in 2015, for which she was treated with Botox in January and February 2015; notes from those visits reflect that Claimant responded well to the treatment. (R. at 357-65). Treatment notes from April and July 2015 reflect that Claimant was weaning off of medications in order to attempt to conceive, and that she was off of Fentanyl "and has not noticed any change in pain." (R. at 362). The ALJ reasonably afforded little weight to Dr. Kalonaros' Physical Residual Functional Capacity, which concludes, among other things, that Claimant would be "incapable of [performing] even 'low stress' jobs" based on his evaluation of Claimant since 2010, since those conclusions conflict with Claimant's ability to engage in substantial gainful employment through 2013 and 2014. (R. at 325-29).

15. Claimant was also seen by consultative examiners, Dr. Siddiqui and Dr. Duffy, in 2013. (R. at 297-301, 302-06). The ALJ gave these evaluations "some weight" because the minimal functional limitations suggested were consistent with the Claimant's ability to engage in substantial gainful activity through 2014. (R. at 18). For example, Dr. Duffy, who completed a psychiatric examination, found that Claimant was "able to maintain a regular schedule," "can learn new tasks" and perform complex tasks independently" and although she "may have some mild to moderate difficulties," her psychiatric problems were not "significant enough to interfere with [her] ability to function on a daily basis." (R. at 305). Dr. Siddiqui, who conducted

8

the physical examination, concluded that "there are no limitations" in the Claimant's ability to perform physical tasks. (R. at 300).

16. Finally, the ALJ afforded "little weight" to the opinion of psychological consultant, Dr. Tzetzo, whose October 2013 evaluation concluded that Claimant experienced mild restriction in daily living activities. (R. at 81-82). The ALJ reasoned that Dr. Tzetzo's opinion was deserving of little weight because it conflicted with Claimant's "demonstrated ability to engage in substantial gainful activity as an accountant through 2013 and 2014 and appears to be incompatible with the limitations said to exist as of October 2013," specifically "the noted moderate limitation in [Claimant's] ability to maintain concentration, persistence or pace." (R. at 18).

17. The Court finds that the ALJ properly and adequately discussed his reasons for assigning "little weight" to the medical opinions in the record and, accordingly, his RFC determination rests on substantial evidence. See Rivera v. Berryhill, 312 F. Supp. 3d 375, 380 (W.D.N.Y. 2018) (finding an RFC determination supported by substantial evidence were "the ALJ discussed the medical opinion evidence, set forth his reasoning for the weight afforded to each opinion, and cited and discussed specific evidence in the record which supported his determination"). While Plaintiff argues that the ALJ's failure to assign more than "little" or "some" weight to the medical opinions in the record, it is well established that "an ALJ's conclusion need not 'perfectly correspond with any of the opinions of medical sources cited in his decision.'" Wynn v. Comm'r of Soc. Sec., 342 F. Supp. 3d 340, 348 (W.D.N.Y. 2018) (quoting Matta, 508 F. App'x at 56). "Simply because the ALJ affords no single opinion controlling weight does not mean that [he] substitutes [his] own expertise of the medical proof for medical opinion." Id. (internal

9

citations, quotation marks, and alterations omitted). "Rather. what is required is that the ALJ explain the bases for [his] findings with sufficient specificity to permit meaningful review." Id. (internal citations, quotation marks, and alterations omitted). Because the ALJ did so here, there is no basis to conclude that the ALJ substituted his "own expertise or view of the medical proof [in place of] any competent medical opinion." Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015).

18. Last, Plaintiff argues that the ALJ "failed to comply with SSR 82-59 when he repeatedly cited to [Claimant's] noncompliance with treatment pursuant to her hope of becoming pregnant." (Docket 8-1 at 21). "SSR 82–59 provides that a claimant may be 'denied disability benefits if the Secretary finds that she unjustifiably failed to follow prescribed treatment and that if she had followed the treatment, she would not be disabled under the Act.'" Goff v. Astrue, 993 F. Supp. 2d 114, 127 (N.D.N.Y. 2012) (quoting McFadden v. Barnhart, No. 94 Civ. 8734, 2003 WL 1483444, at *8 (S.D.N.Y. Mar. 21, 2003) and citing 20 C.F.R. §§ 404.1530, 416.930, SSR 82–59). "The SSR 82–59 rule applies when the claimant has already been found to be disabled, but the ALJ concludes that she is not entitled to benefits because compliance with the prescribed treatment would restore her ability to work." Id.

19. In the present case, SSR 82-59 does not apply because the ALJ did not determine that Claimant was disabled. See Benedict v. Heckler, 593 F. Supp. 755, 759 (E.D.N.Y. 1984) ("An individual who would otherwise be found to be under a disability, but who fails without justifiable cause to follow treatment prescribed by a treating source which the SSA determines can be expected to restore the individual[']s ability to work,

cannot by virtue of such 'failure' be found to be under a disability.") (quoting SSR 82–59). Accordingly, Plaintiff's arguments on this point are misplaced.

20. Having reviewed the ALJ's decision in light of Plaintiff's arguments, this Court finds no reversible error. The decision contains a thorough discussion of the medical evidence supporting the ALJ's determination that Plaintiff is not disabled. Plaintiff's Motion for Judgment on the Pleadings is therefore denied. Defendant's motion seeking the same relief is granted.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 8) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 10) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated: March 7, 2019
        Buffalo, NY

                                      /s/William M. Skretny
                                      WILLIAM M. SKRETNY
                                      United States District Judge